**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: _____

SECURITIES AND EXCHANGE COMMISSION,

                    **Plaintiff,**

v.

PROPERTY INCOME INVESTORS LLC,
EQUINOX HOLDINGS INC.,
PROPERTY INCOME INVESTORS 26 LLC,
PROPERTY INCOME INVESTORS 304 LLC,
PROPERTY INCOME INVESTORS 201 LLC,
PROPERTY INCOME INVESTORS 3504 LLC,
PROPERTY INCOME INVESTORS 1361 LLC,
PROPERTY INCOME INVESTORS 4020 LLC,
PROPERTY INCOME INVESTORS 9007 LLC,
PROPERTY INCOME INVESTORS 417 LLC,
PROPERTY INCOME INVESTORS 4450 LLC,
PROPERTY INCOME INVESTORS 3050 LLC,
LARRY B. BRODMAN, AND
ANTHONY NICOLOSI (F/K/A ANTHONY PELUSO),

                    **Defendants.**

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### I. INTRODUCTION

1. The Commission brings this action to enjoin Defendants from continuing to violate the registration and anti-fraud provisions of the federal securities laws.

2. From at least January 2016 through September 2020, Property Income Investors LLC ("PII") and Larry B. Brodman ("Brodman"), PII's Managing Member and Chief Executive Officer, raised approximately $9.06 million from about 156 investors residing in 26 states through

a series of unregistered fraudulent securities offerings in 11 companies controlled by PII and Brodman: Equinox Holdings Inc. ("Equinox"), Property Income Investors 26 LLC ("PII 26 LLC"), Property Income Investors 304 LLC ("PII 304 LLC"), Property Income Investors 201 LLC ("PII 201 LLC"), Property Income Investors 3504 LLC ("PII 3504 LLC"), Property Income Investors 1361 LLC ("PII 1361 LLC"), Property Income Investors 4020 LLC ("PII 4020 LLC"), Property Income Investors 9007 LLC ("PII 9007 LLC"), Property Income Investors 417 LLC ("PII 417 LLC"), Property Income Investors 4450 LLC ("PII 4450 LLC"), and Property Income Investors 3050 LLC ("PII 3050 LLC") (collectively, the "Property Entities").

3. The purported purpose of the offerings was to raise money for the purchase of turnkey, multifamily properties located in South Florida, which would then be renovated, rented to tenants, and eventually sold. PII and Brodman primarily used unregistered sales agents to market the securities in PII and the Property Entities, including Anthony Nicolosi ("Nicolosi"), who was the highest producing sales agent. Investors were to receive regular distributions of rent collected from the properties in which they invested, as well as a portion of any property sale proceeds.

4. In reality, Brodman misappropriated approximately $1.12 million in investor funds, which was diverted into his personal account. Brodman, PII, and the Property Entities also misused approximately $1.2 million in investor funds by paying sales commissions to sales agents, including Nicolosi, despite statements in the offering materials that commissions would only be paid to licensed brokers. A portion of the "profits" distributed to investors were actually payments funded by other investors, and there was extensive commingling of investor funds.

5. As a result of the conduct alleged in this Complaint:

      a.      PII, Brodman, Property Entities, and Nicolosi violated Sections 5(a) and (c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e(a) and (c)];

      b.      PII, Brodman, and Property Entities violated Sections 17(a)(1), (2), and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2), and (3)];

      c.      PII, Brodman, and Property Entities violated Section 10(b) [15 U.S.C. § 78(j)(b)], and Rules 10b-5(a), (b), and (c) [17 C.F.R. § 240.10b-5(a), (b), and (c)] of the Securities Exchange Act of 1934 ("Exchange Act"); and

      d.      Nicolosi violated Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o].

6.      The Commission requests, among other things, that this Court appoint a receiver over PII and the Property Entities, enjoin Defendants from committing further violations of the federal securities laws as alleged in this Complaint, and order them to pay disgorgement plus prejudgment interest and monetary penalties based upon these violations.

## II.  DEFENDANTS

7.      **PII** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII and its securities have never been registered with the Commission in any capacity.

8.      **Equinox** is an active Florida corporation with principal place of business in Coral Springs, Florida.  Equinox and its securities have never been registered with the Commission in any capacity.

9.      **PII 26 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 26 LLC and its securities have never been registered with the Commission.

10. **PII 304 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 304 LLC and its securities have never been registered with the Commission in any capacity.

11. **PII 201 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 201 LLC and its securities have never been registered with the Commission.

12. **PII 3504 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 3504 LLC and its securities have never been registered with the Commission.

13. **PII 1361 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 1361 LLC and its securities have never been registered with the Commission in any capacity.

14. **PII 4020 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 4020 LLC and its securities have never been registered with the Commission.

15. **PII 9007 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 9007 LLC and its securities have never been registered with the Commission.

16. **PII 417 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida.  PII 417 LLC and its securities have never been registered with the Commission.

17. **PII 4450 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida. PII 4450 LLC and its securities have never been registered with the Commission.

18. **PII 3050 LLC** is an active Florida limited liability company with its principal place of business in Coral Springs, Florida. PII 3050 LLC and its securities have never been registered with the Commission.

19. **Brodman** resides in Coral Springs, Florida. He is the founder and Managing Member of PII. He is also the Managing Member and/or Chief Executive Officer ("CEO") of the Property Entities. From March 1999 through July 1999, Brodman was associated as a registered representative with Emerson Bennett & Associates, a broker-dealer registered with the Commission.

20. **Nicolosi** (f/k/a Anthony Peluso) resides in Lake Worth, Florida. Nicolosi was a sales agent for PII and the Property Entities, and offered and sold the companies' securities to investors. He was their top producing sales agent. Between October 1994 and December 2000, Nicolosi was associated as a registered representative with a total of 18 broker-dealers registered with the Commission. In June 2001, the National Association of Securities Dealers (NASD) permanently barred Nicolosi (then known as Anthony Peluso) from association with any NASD member in any capacity for engaging in high-pressure sales tactics and making misrepresentations to customers. He later legally changed his name to Anthony Nicolosi. In December 2010, the Alabama Securities Commission issued a cease and desist order against Nicolosi for selling unregistered securities and for failing to disclose his prior NASD bar and name change to investors in an unrelated, prior securities offering.

### III.     JURISDICTION AND VENUE

21. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d), 21(e), and 27(a) of the Exchange Act, 15 U.S.C. §§ 78u(d), (e) and 78aa(a).

22. This Court has personal jurisdiction over Defendants, and venue is proper in the Southern District of Florida, because Defendants reside in this District and many of Defendants' acts and transactions constituting violations of the Securities Act and Exchange Act occurred in this District.

23. In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, or of the mails.

### IV.     FACTUAL ALLEGATIONS

#### A.     The Unregistered Securities Offerings

24. From at least January 2016, Brodman began soliciting money from investors through a series of unregistered securities offerings in PII and the Property Entities in order to fund his residential real estate business.

25. The securities sold were in the form of "Membership Interests" in PII and the Property Entities, with the exception of Equinox where the investments sold were common stock in that company.

26. Initially, Brodman sold investments in Equinox, a company formed in 2012 and for which he served as the CEO.

27. Brodman founded PII in March 2016, and he served as its Managing Member and CEO at all relevant times.

28. PII marketed itself as a "real estate investment company based in South Florida with a focus on multifamily, turnkey properties."

29. Brodman subsequently formed the Property Entities, each for a specific multi-family residential property.

30. Brodman and PII created offering materials for the Property Entities offerings that were disseminated to investors.

31. The offering materials included a private placement memoranda ("PPM"), an "Operating Agreement," a "Subscription Agreement" which included an "accredited investor" questionnaire, and packets containing information about the properties to be purchased.

32. The purported purpose of the offerings was to raise money for the purchase of turnkey multifamily properties located in South Florida, which would then be renovated, rented to tenants, and eventually sold.

33. The offering materials provided to investors stated that offering proceeds would be used almost entirely for the acquisition of investment properties and "capital improvements."

34. According to the materials, investors would receive regular distributions of rent collected from the properties in which they invested, as well as a portion of property sale proceeds.

35. The subscription documents included in the materials for each of the Property Entities offerings claimed that investor funds from the offering were to be used to purchase a specific multi-family residential property.

36. In general, the name of each property entity contained the street number for the targeted property.

37. If an investor agreed to invest, they were required to sign the Subscription Agreement.

38. The role of the investors was limited to investing money into the venture. Investors had no control over PII or Property Entities or the purchase, renovation, rental, management, or sale of the properties. They relied solely on Defendants to generate profits.

39. The Membership Interests and common stock are investment contracts, and therefore securities, within the meaning of the Securities Act and the Exchange Act.

40. PII and the Property Entities solicited and raised money from investors through a network of sales agents, including Nicolosi, none of whom were registered as brokers or associated with registered broker-dealers during the relevant time period.

41. The sales agents were paid a commission on each new investor sale, which came out of investor funds.

42. During sales calls, PII's sales agents gave prospective investors a general description of the investment opportunity and told them that their money would be used to purchase and renovate properties.

43. Investors were also told about the profits they could expect to receive from the venture.

44. For example, Nicolosi told at least one investor that he could expect quarterly distributions of profits from rental income totaling approximately 7.5% annually, and that the investor would also be entitled to a proportional share of profits from any eventual property sale.

45. Brodman also participated in investor sales calls and solicited some investors directly.

46. Brodman provided at least one investor with an explanation of PII's process for finding and purchasing properties, renovating them, and finding tenants.

47. Brodman represented to another investor that Equinox, one of the Property Entities, was audited annually and that the audit for 2019 had been delayed because of COVID-19.

48. In addition to the sales agents, PII and Brodman also marketed their securities through the company's website, as well as through a crowdfunding website, where they advertised expected annual returns of 12%.

49. PII, Property Entities, Brodman, and Nicolosi directly offered and sold these securities through offerings that were not registered with the Commission, and there were no valid exemptions from registration available.

### B.     Amounts Raised for Each of the Property Entities

50. From at least January 2016 through September 2020 ("Relevant Period"), PII and Brodman raised approximately $9.06 million from about 156 investors residing in 26 states through a series of unregistered securities offerings in PII and the Property Entities.

51. The following chart lists the investment dates and total amounts raised for each of the offerings:

| Issuer | First Investment | Last Investment | Amount Raised |
|---|---|---|---|
| **Equinox Holdings, Inc.** | 1/1/2016 | 8/5/2020 | $2,146,375 |
| **PII LLC** | 10/1/2016 | 6/30/2019 | $1,932,775 |
| **PII 26 LLC** | 12/1/2016 | 1/31/2019 | $375,758 |
| **PII 304 LLC** | 2/1/2017 | 9/11/2020 | $972,000 |
| **PII 201 LLC** | 2/1/2017 | 3/31/2017 | $93,500 |
| **PII 3504 LLC** | 6/1/2017 | 8/31/2017 | $521,754 |
| **PII 1361 LLC** | 9/1/2017 | 9/30/2019 | $829,650 |
| **PII 4020 LLC** | 11/6/2017 | 2/28/2018 | $296,000 |
| **PII 9007 LLC** | 2/1/2018 | 5/31/2018 | $514,250 |
| **PII 417 LLC** | 4/23/2018 | 1/31/2019 | $286,075 |
| **PII 4450 LLC** | 10/1/2018 | 8/31/2019 | $424,700 |
| **PII 3050 LLC** | 6/1/2019 | 8/31/2019 | $673,445 |
| **Total** | | | **$9,066,281** |

### C. Misappropriation and Misuse of Investors' Funds

52. PII and the Properties Entities each maintained its own separate bank account.

53. Brodman was the sole signatory on all of the PII and Property Entities bank accounts.

54. Although investor funds were initially deposited into the bank account of the applicable offering entity, the funds were later transferred out and commingled with monies from other Property Entities.

55. After sending in their money, investors sometimes received quarterly account statements from PII showing the investor's principal investment amount and purported dividends earned to date.

56. PII and the Property Entities, through Brodman, told prospective investors that offering proceeds would be used for the acquisition of investment properties and for capital improvements on those properties.

57. The PPMs distributed to investors also specifically provided that Brodman was not to receive any "compensation or management fees while overseeing the [offering entity's] operations."

58. The PPMs and Operating Agreements instead stated that Brodman would receive 30% of net profits from rent paid, with investors receiving the remaining 70% of rental profits.

59. In addition, Brodman would receive 50% of the profits from any property sales, with the remainder being distributed to investors.

60. PII and the Property Entities have spent approximately $4.1 million of investor funds on the acquisitions of twelve multi-family residential properties, with purchase prices ranging from $265,000 to $1.25 million.

61. The companies spent another $752,000 in investor money to renovate and maintain the properties.

62. PII and the Property Entities currently own nine properties, which are all located in the South Florida area.

63. PII and the Property Entities have generated about $1.04 million in rent payments from tenants on the properties.

64. The companies did not distribute any profits from property sales to investors during the Relevant Period.

65. Based on the disclosures in the offering materials, Brodman was entitled to receive, at most, a total of approximately $312,000 (rental income of $1.04 million multiplied by 30%) as his share of the profits from the businesses.

66. However, even after offsetting this $312,000, Brodman misappropriated approximately $1.12 million in investor funds, which was diverted into his personal account.

67. In addition, Brodman, PII, and the Property Entities misused approximately $1.2 million in investor funds by paying undisclosed sales commissions to sales agents, including Nicolosi.

68. The only relevant disclosure in the offering materials regarding sales commissions to brokers, stated that "[we] may retain the services of <u>licensed</u> brokers/dealers and compensate these broker/dealers with a cash commissions not to exceed 10% of the proceeds raised (emphasis added)."

69. PII's sales agents – including Nicolosi – were not licensed or registered as brokers or associated with registered broker-dealers at the time they offered and sold these investments. Even if these sales agents were licensed, the disclosed 10% limit would have been exceeded in at

least some of the PII and Property Entities offerings since the $1.2 million in aggregate commissions paid out to the agents was more than 10% of the $9.06 million of investor proceeds raised.

70. Moreover, at least $124,000 of purported profits distributed to investors were in reality payments funded by other investors, as the amounts distributed to investors exceeded the investors' share of the rental income by this amount.

71. In addition, a significant portion of $460,000 raised from two investors in August and September 2020 was immediately distributed to investors in payments mischaracterized as "quarterly profits" distributions and used to redeem an earlier investor.

72. In total, PII, Property Entities, and Brodman misappropriated and misused approximately $2.44 million of the offering proceeds.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 5(a) and (c) of the Securities Act
### (Against PII, Property Entities, Brodman, and Nicolosi)

73. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

74. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities PII, Property Entities, Brodman, and Nicolosi offered and sold as described in this Complaint and no exemption from registration existed with respect to these securities.

75. During the Relevant Period, PII, Property Entities, Brodman, and Nicolosi, directly or indirectly:

    (a)    made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

76. By reason of the foregoing, PII, Property Entities, Brodman, and Nicolosi violated, and unless enjoined, are reasonably likely to continue to violate Sections 5(a) and (c) of the Securities Act [15 U.S.C. § 77e(a) and (c)].

## COUNT II
### Violations of Section 17(a)(1) of the Securities Act
(Against PII, Property Entities, and Brodman)

77. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

78. During the Relevant Period, PII, Property Entities, and Brodman, in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed any device, scheme, or artifice to defraud.

79. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

**COUNT III**
**Violations of Section 17(a)(2) of the Securities Act**
**(Against PII, Property Entities, and Brodman)**

80. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

81. During the Relevant Period, PII, Property Entities, and Brodman, in the offer or sale of securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

**COUNT IV**
**Violations of Section 17(a)(3) of the Securities Act**
**(Against PII, Property Entities, and Brodman)**

83. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

84. During the Relevant Period, PII, Property Entities, and Brodman, in the offer or sale of securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently engaged in transactions, practices and courses of business which operated or would have operated as a fraud or deceit upon the purchasers and prospective purchasers of such securities.

85. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Sections 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT V
### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
**(Against PII, Property Entities, and Brodman)**

86. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

87. During the Relevant Period, PII, Property Entities, and Brodman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes, or artifices to defraud in connection with the purchase or sale of securities.

88. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) [15 U.S.C. § 78(j)(b)] and Rule 10b-5(a) of the Exchange Act [17 C.F.R. § 240.10b-5(a)].

## COUNT VI
### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
**(Against PII, Property Entities, and Brodman)**

89. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

90. During the Relevant Period, PII, Property Entities, and Brodman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in connection with the purchase or sale of securities.

91. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) [15 U.S.C. § 78(j)(b)] and Rule 10b-5(b) of the Exchange Act [17 C.F.R. § 240.10b-5(b)].

### COUNT VII
### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (Against PII, Property Entities, and Brodman)

92. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint as if fully set forth herein.

93. During the Relevant Period, PII, Property Entities, and Brodman, directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices and courses of business which operated or would have operated as a fraud or deceit upon any person in connection with the purchase or sale of securities.

94. By reason of the foregoing, PII, Property Entities, and Brodman violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) [15 U.S.C. § 78(j)(b)] and Rule 10b-5(c) of the Exchange Act [17 C.F.R. § 240.10b-5(c)].

### COUNT VIII
### Violations of Section 15(a)(1) of the Exchange Act
### (Against Nicolosi)

95. The Commission repeats and realleges Paragraphs 1 through 72 of its Complaint.

96. During the Relevant Period, Nicolosi, directly or indirectly, by use of the mails or any means or instrumentality of interstate commerce effected transactions in, or induced or attempted to induce the purchase or sale of securities, while he was not registered with the Commission as a broker or dealer or not associated with an entity registered with the Commission as a broker-dealer.

97. By reason of the foregoing, Nicolosi violated, and, unless enjoined, is reasonably likely to continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged and:

### I.

### Appointment of a Receiver

Appoint a receiver over PII and the Property Entities.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this Complaint.

### III.

### Disgorgement and Prejudgment Interest

Issue an Order directing Defendants to disgorge all ill-gotten gains or proceeds received including prejudgment interest thereon as a result of the acts and/or courses of conduct alleged in this Complaint.

### IV.

### Penalties

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

## V.

## **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

## VI.

## **Retention of Jurisdiction**

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

June 7, 2021                                                                Respectfully submitted,

s/Alice K. Sum
Alice K. Sum, Esq.
Trial Counsel
Fla. Bar No. 354510
Direct Dial: (305) 416-6293
Email:  sumal@sec.gov

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Telephone:   (305) 982-6300
Facsimile:    (305) 536-4154